UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRANCISCO HILARIO FRANCISCO FRANCISCO,

                Petitioner,

   v.

LAURA HERMOSILLO ET AL.,

                Respondents.

Case No. C25-2738-SKV

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

      Petitioner Francisco Hilario Francisco Francisco is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he asserts that his re-detention after release from custody on an order of recognizance violates his constitutional right to due process under the Fifth Amendment to the United States Constitution. See Dkt. 1 at 5. Respondents, in a return to the petition, argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) and that his prior release was revocable at the Government's discretion and without a hearing. See Dkt. 7 at 2, 4. Having considered the Petition, the Return, Petitioner's Reply, Dkt. 10, and the governing law, the Court finds that the Government's re-detention of Petitioner,

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

without prior notice or an opportunity to be heard, violated his constitutional right to due process.  Accordingly, the Court GRANTS his habeas petition, ORDERS his immediate release from custody, and further ORDERS that he may not be re-detained without first being provided adequate notice of the grounds for his re-detention and a hearing before a neutral decisionmaker.

## I. BACKGROUND

Petitioner is a native and citizen of Guatemala who identifies as indigenous Maya.  *See* Dkt. 1 at 2.  He arrived in the United States in May 2023 and was detained by Customs and Border Patrol near the southern border in Texas.[1]  *See id.*  He was served with a notice to appear for removal proceedings and an order of release on recognizance ("OREC").  *See id.* at 3; Dkt. 1-2 at 2 (OREC); Dkt. 9-2 at 2 (Notice to Appear).  One of the conditions of Petitioner's release was obtaining advance written approval for any changes of address.  *See* Dkt. 1-2 at 2; Dkt. 7 at 2.

The parties disagree on what happened after Petitioner's release.  Petitioner states that, for reasons unknown to him, Border Patrol listed a homeless shelter in Chicago, Illinois, as his address in their records.  *See* Dkt. 10 at 2; Dkt. 9-1 at 4.  Petitioner had family members in Alabama and went to stay with them after his release.  *See* Dkt. 10 at 3.  Respondents contend that Petitioner provided the shelter's address, and that his first immigration court appearance was accordingly scheduled in Chicago.  *See* Dkt. 8 at 2.

---

[1] The parties agree Petitioner was detained on December 26, 2025, without first being afforded a hearing.  The Court relays the facts as alleged by the parties regarding Petitioner's arrival to the United States and his activities since.  In view of the significant factual disputes evinced by the record, and because the outcome of those disputes has no bearing on the issues before it, the Court herein makes no factual findings regarding Petitioner's compliance with his conditions of release.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

Approximately one month after his initial release, Petitioner went to the Birmingham, Alabama, ICE office to check in and provide his address. *See* Dkt. 1 at 4; Dkt. 7 at 3 n.1. The parties appear to agree that Petitioner did not report to Enforcement and Removal Operations ("ERO"), a subset of ICE, in Chicago. *See* Dkt. 10 at 3; Dkt. 7 at 2.

In July 2023, Petitioner moved to his current address in Oregon. *See* Dkt. 1 at 4. In September 2023, after locating someone who could speak Akateko, Petitioner states he updated his address with U.S. Citizenship and Immigration Services, ICE, and the immigration court. *See id*. Respondents concede that Petitioner ultimately updated his address with the immigration court but contend that Petitioner did not update his information with ERO. *See* Dkt. 7 at 2; Dkt. 8 at 3.

On October 5, 2023, the Chicago immigration court held a hearing and ordered Petitioner removed in absentia. *See* Dkt. 1 at 4. On October 12, 2023, Petitioner filed a defensive I-589 application for asylum. *See* Dkt. 1-6 at 2. In May and June 2024, aided by counsel, Petitioner successfully reopened his removal proceedings and changed the venue from Chicago to Portland. *See* Dkt. 1 at 4. His I-589 receipt notice, biometrics appointment notice, and immigration court order changing venue all bore Petitioner's Oregon address. *See* Dkt. 1-6 at 2; Dkt. 1-7 at 2; Dkt. 1-8 at 2. In July 2024, the Portland immigration court scheduled Petitioner's asylum hearing for October 8, 2027. *See* Dkt. 1-9 at 2. Petitioner received work authorization, and he has no criminal record. *See* Dkt. 1 at 4–5.

On December 26, 2025, Petitioner was detained by ICE while he was leaving home for work. *See* Dkt. 1 at 5. Respondents state that ICE was at Petitioner's apartment complex searching for a different individual and that Petitioner "matched the general description of the target." Dkt. 7 at 2–3. After pulling Petitioner's car over, officers inquired about his status. *See*

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

Dkt. 8 at 3. Respondents contend that Petitioner provided his employment authorization card and admitted he was a citizen of Guatemala who entered the United States unlawfully. *See id.* at 3–4. Following record checks, which apparently revealed Petitioner's ongoing immigration proceedings in Oregon but did not entail review of his A-file, the officers placed Petitioner under arrest for immigration violations. *See* Dkt. 9-4 at 4. That same day, Petitioner was transferred to the NWIPC pending further proceedings in his immigration case.[2] *See* Dkt. 8 at 4. Four days after his arrest, Petitioner filed the instant petition for a writ of habeas corpus seeking immediate release from custody. *See* Dkt. 1 at 6; Dkt. 10 at 11.

## II.    DISCUSSION

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026). Here, Petitioner claims his re-detention constitutes a deprivation of liberty without due process of law in violation of the Fifth Amendment to the United States Constitution. *See* Dkt. 1 at 4; U.S. Const. Amend. V. He argues that he is not subject to mandatory detention because he was previously released on his own recognizance, does not pose a flight risk or danger to the community, and was not afforded a hearing pre-arrest to determine whether changed circumstances justified re-detention. *See* Dkt. 1 at 5; Dkt. 10 at 2.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."

---

[2] Petitioner has an immigration court hearing in Tacoma, Washington, scheduled for January 22, 2026. That hearing was originally scheduled for January 14, 2026, but had to be rescheduled because the immigration court could not locate an Akateko interpreter. *See* Dkt. 10 at 4. Neither party has advised the Court of the nature of that proceeding, but the Executive Office for Immigration Review ("EOIR") Automated Case Information indicates that Petitioner has a master calendar hearing scheduled for that date. The Court proceeds on the understanding that Petitioner's upcoming immigration hearing has no bearing on the issues presented by his habeas petition.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  It is well established that due process rights extend "to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

While due process is flexible and adequate procedural protections can vary based on the circumstances, *id.* at 334, courts look to the three-part test established in *Mathews v. Eldridge* to determine what procedures suffice.  The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.  "In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in 'the immigration detention context[,]'" and this Court and other district courts have applied it in cases such as this one that involve re-detention after release.  *Yildirim*, 2026 WL 111358, at *2 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022)); *see, e.g.*, *Cabrera Perez, v. Hermosillo*, No. C25-2542-RSM, 2026 WL 100735, at *6 (W.D. Wash. Jan. 14, 2026); *Llanes Tellez v. Bondi*, No. 25-CV-08982-PCP, 2025 WL 3677937, at *5 (N.D. Cal. Dec. 18, 2025).  Petitioner urges this Court to follow suit.  *See* Dkt. 10 at 6.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

1    In their Return, Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), not discretionary detention under 8 U.S.C. § 1226(a), pursuant to the Board of Immigration Appeals ("BIA") decision *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *See* Dkt. 7 at 3, 5. They make that argument notwithstanding Petitioner's OREC, which states that, "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations," Petitioner was "released on . . . [his] own recognizance[.]" Dkt. 1-2 at 2. "Section 236 of the Immigration and Nationality Act [("INA")] corresponds to 8 U.S.C. § 1226[,]" while different INA sections correspond to 8 U.S.C. § 1225. *Llanes Tellez*, 2025 WL 3677937, at *3; *Immigration and Nationality Act*, U.S. Citizenship & Immigration Services, https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act (linking INA 236 to 8 U.S.C. 1226, the corresponding U.S. Code section). And, while Respondents acknowledge that courts in this District have "found that the revocation of OREC requires a pre-deprivation hearing to determine if that noncitizen is a flight risk or a danger to the community[,]" they "[r]espectfully" disagree and tangentially address only the third *Mathews* factor—the Government's general interest in detaining removable non-citizens.[3] Dkt. 7 at 6–7 (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025)).

This Court is not obliged to defer to BIA statutory interpretations, and Respondents offer no substantive analysis demonstrating why the Court should now deviate from prior decisions in

---

[3] The Government has brought similarly cursory arguments in other cases, and they have been repeatedly rejected by courts in this District. *See, e.g.*, *Grajeda Velazquez v. Wamsley*, No. 2:25-CV-02641-JHC, 2026 WL 84223, at *3 (W.D. Wash. Jan. 12, 2026) ("Respondents do not directly address Petitioner's due process rights nor attempt to engage with the *Mathews* factors. . . . Instead, Respondents contend that Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(1) and, contrary to the recent decisions of other district courts, C.F.R. § 1236.1(c)(9) permits Respondents to revoke the release of noncitizens like Petitioner at any time."); *Da Silva v. Scott*, No. 2:25-CV-2651-RSM, 2026 WL 100705, at *2 (W.D. Wash. Jan. 14, 2026) ("The Government 'acknowledge[s]' the holding in *E.A. T.-B.* and similar cases from the district courts but '[r]espectfully' disagrees, arguing that 'these decisions erroneously conflate' the Government's statutory requirements."); *Cabrera Perez*, 2026 WL 100735, at *6 (same).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

this District rejecting *Matter of Yajure-Hurtado*'s conclusions, holding that noncitizens already residing in the United States are subject to discretionary detention under Section 1226(a), *see, e.g.*, *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1335–36 (W.D. Wash. 2025), and holding that due process requires that individuals previously granted release be afforded a hearing prior to re-detention, *see, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324.  Indeed, "[t]he overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-CV-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases); *see also Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (collecting cases).  Consistent with this District's precedents, and in view of Petitioner's order of release pursuant to Section 1226, the Court deems Section 1226 applicable, considers the *Mathews* factors as applied to this case, and evaluates whether Petitioner's re-detention comported with constitutional due process requirements.

      First, Petitioner has a constitutionally protected interest in his continued liberty.  His interest in not being detained "is the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  Since his initial release nearly three years ago, Petitioner connected with family members, established himself in Oregon, obtained an apartment, and found employment.  Even if the Government had initial discretion to detain or release Petitioner, its decision to release him on conditional parole triggers "a protected liberty interest in remaining out of custody[]" applicable here. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).  The first *Mathews* factor weighs in Petitioner's favor.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

Second, the circumstances of Petitioner's arrest underscore the high risk of erroneous deprivation of his liberty absent a pre-detention hearing. Petitioner became re-detained almost a month ago because ICE agents mistook him for another individual. Respondents now allege violations of his release conditions that occurred years ago, which implicate a host of factual disputes, including whether Petitioner satisfied check-in requirements after his release and updated his address with all necessary entities. *Compare* Dkt. 9-4 at 3–4 (December 26, 2025, Department of Homeland Security arrest documentation noting Petitioner's failure to update address), *and* Dkt. 7 at 3 n.1 (noting "clarifications that may not have been identified at the time" arrest documentation was drafted regarding Petitioner's check-ins and address updates), *with* Dkt. 1-4 at 2 (completed Department of Homeland Security Alien's Change of Address Card dated September 11, 2023), *and* Dkt. 1-5 at 2 (completed EOIR Change of Address form dated September 22, 2023). Petitioner's re-detention prior to a hearing in which factual questions could be resolved maximized the risk that his liberty interest would be erroneously deprived. The second *Mathews* factor favors Petitioner.

Finally, the Government's countervailing interest in detaining Petitioner prior to a hearing is minimal. The parole infractions Respondents now allege apparently occurred years ago. Petitioner reported his updated addresses to the Government, even if imperfectly, despite an apparent language barrier.[4] He filed an application for asylum that remains pending. The alleged violations were apparently not acted upon by the Government during or proximate to any of those contacts. In their Return, Respondents point to no exigency that required Petitioner's

---

[4] Certain Homeland Security documents tendered by Respondents indicate that Petitioner speaks Spanish. *See* Dkt. 9-1 at 4; Dkt. 9-2 at 3. However, Petitioner represents that he faced difficulty communicating his updated address in Oregon due to inability to find an Akateko speaker and an immigration hearing originally scheduled during the pendency of briefing of his habeas petition was rescheduled due to the immigration court's inability to locate an Akateko interpreter. *See* Dkt. 10 at 4.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

immediate re-detention on December 26, 2025, or any indication that he had become a flight risk or danger to the community. Nor could they—the arresting officers encountered Petitioner by mistake and without prior intent to arrest him on the alleged violations, which were apparently discovered after examining *only some* portions of his immigration file available to them in the field. *See* Dkt. 9-4 at 4. That cursory record check led to Petitioner's arrest and a corresponding report that subsequently required "clarifications" on material facts relevant to Petitioner's compliance with his release conditions. Dkt. 7 at 3 n.1. The Government could have done that same diligence on the front end, with no apparent increased burden, to clarify the facts prior to subjecting Plaintiff to a month-long period of detention. In sum, the Government's general interest in removing deportable non-citizens raised by Respondents would not have been, in any discernable way, burdened by affording Petitioner notice and a hearing prior to re-detaining him on untested violation allegations. *See Yildirim*, 2026 WL 111358, at *4 ("That Petitioner's alleged violation occurred more than a year before it was acted upon, and Petitioner checked in multiple times with Government offices where the alleged violation could have been addressed but was not, undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable."). Accordingly, the third *Mathews* factor also weighs in Petitioner's favor.

   The Court concludes that Petitioner has shown, by a preponderance of the evidence, that he is being unconstitutionally held. Petitioner was entitled to due process before being deprived of his liberty interest in continued release. Because no pre-deprivation hearing was held before he was re-detained, his constitutional right to due process was violated.

   "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), and may dispose of habeas

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

matters "as law and justice require," 28 U.S.C. § 2243.  Here, the Court finds immediate release to be the most appropriate remedy for Petitioner's unconstitutional re-detention.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition at Docket No. 1 and ORDERS that Petitioner be IMMEDIATELY released from custody subject to the same conditions of release that governed before he was re-detained.  The Court further ORDERS that Petitioner shall not be re-detained until after a hearing before a neutral decisionmaker and adequate notice of his alleged release violations.  Within **twenty-four (24) hours** of the issuance of this Order, the Government is ORDERED to file a declaration confirming that Petitioner has been released.

Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 22nd day of January, 2026.

S. KATE VAUGHAN
United States Magistrate Judge